UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**JUDITH MINAHAN** and
**JOANN O'CONNELL,**

       Plaintiffs,

v.                              **CASE NO**. _____

**CITY OF FORT MYERS, FLORIDA,**
and **DAVID CONTICELLI**, Fort Myers
Police Officer, in his personal and
official capacities,

       Defendants.
_____/

**VERIFIED COMPLAINT FOR DAMAGES AND
DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Judith Minahan and JoAnn O'Connell (hereafter Plaintiffs), by and through their undersigned counsel, bring this complaint against Defendant City of Fort Myers, Florida (hereafter Fort Myers or City) and Defendant Officer David Conticelli (hereafter collectively Defendants) and allege the following:

**INTRODUCTION**

1.    Plaintiffs are pro-life advocates who engage in peaceful First Amendment-protected activities, such as sidewalk counseling, prayer, and literature distribution, in traditional public forums in Fort Myers and elsewhere.

2.    Defendants have threatened Plaintiffs and other pro-life advocates with the enforcement of the City's "loitering ordinance" against them if they fail to comply with the City's policy, practice, or custom that requires pro-life advocates to keep moving on a

public sidewalk and not distribute literature or speak with those in vehicles who want to receive their information in a traditional public forum, as set forth in this complaint.

3. Although in a previous case, *Minahan v. City of Fort Myers*, Case No. 2:04-cv-551-JES-DNF (hereafter *Minahan I*), this Court ordered the City, its officers, employees, agents, and successors in office, which would include Defendant Conticelli, not to enforce a similar policy at docket entry 33, referred to in that case as the "February 2004 policy," Defendants continue to enforce terms of that policy on Plaintiffs and other pro-life advocates through the threatened enforcement of the loitering ordinance.

4. Plaintiffs seek to have this Court declare unconstitutional on its face and as applied to them the parts of Section 86-2, Subpart A (Administrative Code), Chapter 86 (Traffic and Vehicles), Article I (General) of the Code of Ordinances of Fort Myers that relate to "loitering" (hereafter the "loitering ordinance") and also declare unconstitutional on its face and as applied to them the City's policy, practice, or custom of restricting the exercise of the constitutional rights of pro-life advocates in the traditional public forums of Fort Myers.

5. Plaintiffs also seek injunctive relief against Defendants' enforcement of the loitering ordinance and the City's policy, practice, or custom of restricting the exercise of the constitutional rights of Plaintiffs and other pro-life advocates in the traditional public forums in Fort Myers.

6. Plaintiffs further seek an award of nominal damages for the loss of their constitutional rights and an award of costs and attorneys' fees associated with this action.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that it arises under the Constitution and laws of the United States and presents a federal question, and pursuant to 28 U.S.C. § 1343(a)(3)-(4), in that it seeks to redress the deprivation, under color of law, of any right, privilege, or immunity secured by the Constitution of the United States or by an Act of Congress providing for equal rights of citizens and in that it seeks to recover damages and secure equitable and other relief under an Act of Congress, specifically 42 U.S.C. § 1983, which provides a cause of action for the protection of civil rights.

8.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

9.      This Court has the authority to award Plaintiffs nominal damages pursuant to 42 U.S.C. § 1983 and other applicable laws, and this Court has the authority to award Plaintiffs their costs and attorneys' fees associated with this action pursuant to 42 U.S.C. § 1988 and other applicable laws.

10.     Venue is proper within this judicial district and division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district and division.

**PLAINTIFFS**

11.   Plaintiff Judith Minahan is an adult citizen of the United States and is a resident of Lee County, Florida.

12.   Plaintiff JoAnn O'Connell is an adult citizen of the United States and is a resident of Lee County, Florida.

**DEFENDANTS**

**City of Fort Myers, Florida**

13.   Defendant City of Fort Myers, Florida, is located in Lee County and is a municipal corporation organized and existing under the Constitution and laws of the State of Florida with right of succession in perpetuum.

14.   Defendant Fort Myers is responsible for creating, adopting, implementing, and enforcing its laws, ordinances, policies, practices, and/or customs, including those set forth in this complaint.

15.   Defendant Fort Myers employs police officers and is liable for their acts undertaken pursuant to its laws, ordinances, policies, practices, and/or customs.

16.   Defendant Fort Myers is responsible for training, supervising, and controlling its police officers.

17.   Defendant Fort Myers has authorized suits against its municipal officers, agents, and employees.

18.   At all times relevant to this action, Defendant Fort Myers was a "person" acting under color of state law as that phrase is used in 42 U.S.C. § 1983.

**Police Officer David Conticelli**

19.   Defendant David Conticelli is an officer with the Police Department of the City of Fort Myers.

20.   At all times relevant to this action, Defendant Officer Conticelli was an agent, servant, and/or employee of Defendant Fort Myers, was a person acting under the color of state law within the meaning of 42 U.S.C. § 1983, and was acting within the scope of his official duties. He is being sued in his personal and official capacities.

**ALLEGATIONS OF FACT**

21.   The controversy over abortion is an important matter of social, moral, and political concern in this country and elsewhere.

22.   The Fort Myers Women's Health Center, an abortion clinic, is located in a medical office complex located at 3900 Broadway Avenue, Fort Myers, Florida (hereafter referred to as the "abortion clinic" and the "medical office complex" respectively).

23.   Broadway Avenue is a public street. Between Broadway Avenue and the medical office complex is a public sidewalk.

24.   Public sidewalks and public streets are traditional public forums.

25.   Two separate driveways lead into and out of the medical office complex and abortion clinic from Broadway Avenue. The two driveways go across the public sidewalk in front of the medical office complex and abortion clinic. Each of the two driveways can accommodate two lanes of vehicle traffic. To get from one side of the public sidewalk to the other side, people generally walk across the driveways.

26. Based on information and belief, these driveway cutouts are public property and/or are part of the public sidewalk and right of way across which anyone is free to walk.

27. There are four office buildings, designated A, B, C, and D, that make up the medical office complex.

28. Buildings A and B face the public sidewalk and the public street. Buildings C and D are behind Buildings A and B and are separated from the public sidewalk and public street by Buildings A and B. The abortion clinic is located in Building C of the medical office complex.

29. Plaintiffs are Christians and volunteer pro-life advocates. They are compelled by their conscience to express their religious views, especially with regard to exposing the evils of abortion, in traditional public forums in Fort Myers, including on the public sidewalk in front of the medical office complex and abortion clinic, and elsewhere.

30. Plaintiffs have deeply held religious beliefs that abortion takes the life of an innocent child. As motivated by their faith, they pray in traditional public forums, including on the public sidewalk in front of the medical office complex and abortion clinic, for the unborn child, the child's parents, the end of abortion, and the religious conversion of those involved with the abortion industry.

31. Plaintiffs are further motivated by their faith to engage in sidewalk counseling to counsel women, in a non-confrontational manner, about such things as alternatives to abortion and post-abortion healing. Plaintiffs' sidewalk counseling efforts include

speaking with women and anyone accompanying them about their concerns and distributing literature that includes abortion-related topics, among other things.

32.   From time to time over the past several years, Plaintiffs have engaged in such activities as peaceful prayer, sidewalk counseling, and literature distribution, on the public sidewalk in front of the medical office complex and abortion clinic, and they wish to continue to do so without being subjected to unconstitutional restrictions as well as threats of arrest, citation, and/or fine.

33.   The public sidewalk in front of the medical office complex and abortion clinic is the only location where Plaintiffs' activities, such as public prayer, sidewalk counseling, and literature distribution, can have any communicative impact on people going into or leaving the medical office complex and abortion clinic.

34.   When Plaintiffs are on the public sidewalk outside the medical office complex and abortion clinic, they do not block pedestrians traversing the sidewalk.

35.   When Plaintiffs are outside the medical office complex and abortion clinic, they sometimes stand on the public sidewalk next to one of the driveways leading into or out of the medical office complex and abortion clinic. To get the attention of those driving into or out of the medical office complex and abortion clinic, Plaintiffs hold out various pieces of literature.

36.   If a driver voluntarily stops, Plaintiffs will hand the driver and/or passenger(s) the literature and will speak with them briefly. The topics of discussion and of the distributed literature differ depending on whether the people are going into the abortion clinic or leaving the abortion clinic, including after having an abortion.

37.   When individuals who are driving into the medical office complex stop to speak with Plaintiffs, Plaintiffs will generally hand them literature and speak with them about abortion-related topics, including information about the possible emotional and physical effects of abortion, nearby maternity homes, local and national helplines, and fetal development.

38.   When individuals who are driving out of the medical office complex stop to speak with Plaintiffs, Plaintiffs will generally hand them literature that provides post-abortion counseling and healing information and a prayer card and will speak with them about their concerns and about God's forgiveness, among other things.

39.   In the rare event that another vehicle pulls up behind the vehicle containing the people who are speaking with Plaintiffs, Plaintiffs will wave that other vehicle around them, as there is generally sufficient room to pass on the two-lane driveways, or they will end their conversation so the vehicles may enter or leave the medical office complex and abortion clinic.

40.   On or about October 2, 2014, Defendant Officer David Conticelli approached Plaintiffs and two other pro-life advocates who were on the public sidewalk in front of the medical office complex and abortion clinic. Plaintiffs Minahan and O'Connell were sidewalk counseling at the time, with Plaintiff Minahan standing on the public sidewalk next to one of the medical office complex driveways and Plaintiff O'Connell standing on the public sidewalk next to the other driveway.

41.   Defendant Officer Conticelli had been speaking with the owner of the medical office complex before approaching Plaintiffs and the other pro-life advocates.

42.   Defendant Officer Conticelli gathered the four pro-life advocates together on the public sidewalk and handed each one a copy of the City's loitering ordinance (Section 86-2).

43.   Defendant Officer Conticelli stated that he would enforce the loitering ordinance against them if they (1) stood in one spot on the public sidewalk in front of the medical office complex and abortion clinic and did not keep walking on that public sidewalk, (2) approached any vehicles entering or leaving the medical office complex and abortion clinic to hand out literature or speak with the occupants of the vehicle, or (3) blocked vehicular traffic entering or leaving the medical office complex and abortion clinic by handing out literature or talking to the people in vehicles.

44.   Defendant Officer Conticelli commented to Plaintiff Minahan that the City's police department generally enforces the loitering ordinance (Section 86-2) against such people as prostitutes.

45.   Section 86-2 of the Code of Ordinances of the City of Fort Myers states in relevant part as it relates to loitering:[1]/

> (a) *Definitions.* The following words, terms and phrases, when used in this section, shall have the meanings ascribed to them in this subsection, except where the context clearly indicates a different meaning:
> . . . .
> *Loitering* means remaining idle in essentially one location and shall include the concept of spending time idly, to be dilatory, to linger, to stay, to saunter, to delay, or to stand around, and shall also include the colloquial expression "hanging around."
> . . . .

---

[1]/ The ordinance also deals with "cruising," which is not the subject of this action.

*Public place* means any place to which the general public has access and a right to resort for business, entertainment, or other lawful purpose, but does not necessarily mean a place devoted solely to the uses of the public. It shall also include the front or immediate area of any store, shop, restaurant, tavern or other place of business and also public grounds, areas or parks.

(b) *Loitering acts prohibited.*

(1) It shall be unlawful for any person to loiter, loaf, wander, cruise in a motor vehicle, stand or remain idle, either alone and/or in consort with others, in a public place in such manner so as to:

a. Obstruct or hinder the movement of traffic on any public street, public highway, public sidewalk, or any other public place or building by hindering or impeding, or tending to hinder or impede, the free and uninterrupted passage of vehicles, traffic or pedestrians.

b. Commit, in or upon any public street, public highway, public sidewalk or any other public place or building, any act or thing which is an obstruction or interference to the free and uninterrupted use of property or with any business lawfully conducted by anyone in or upon or facing or fronting on any such public street, public highway, public sidewalk or any other public place or building, all of which prevents the free and uninterrupted ingress, egress and regress therein, thereon, and thereto.

. . . .

(c) *Duty of police.* When any person causes or commits any of the conditions enumerated in this section, any law enforcement officer shall order that person to stop causing or committing such conditions, and to move on or disperse. Any person who fails or refuses to obey such orders shall be guilty of a violation of this section.

. . . .

(e) *Violations; penalties.* Any person who violates any of the provisions of this section shall be subject to a fine of not less than $25.00, and not exceeding $250.00. Any such violation shall constitute a separate offense.

(Code 1963, § 23-16; Code 1991, § 17-2)

46.   In 2004, Plaintiff Minahan and other pro-life advocates sued Defendant Fort Myers in this Court in Case No. 2:04-cv-551-JES-DNF (*Minahan I*). In that case, plaintiffs challenged the City's parades and processions ordinance and the City's

February 2004 policy, which applied to Plaintiff Minahan and other pro-life advocates who engaged in First Amendment activities in the traditional public forums outside the same medical office complex and abortion clinic that are the subject of the instant complaint. *See Minahan I*, Case No. 2:04-cv-551-JES-DNF, docket entry 1, Compl.; docket entry 33, Ex. 2, February 2004 policy.

47.   The February 2004 policy prohibited Plaintiff Minahan and other pro-life advocates, while on the public sidewalk in front of the medical office complex and abortion clinic, from approaching or blocking pedestrians and vehicles and handing out literature, among other things. *See Minahan I*, Case No. 2:04-cv-551-JES-DNF, docket entry 33, Ex. 2, February 2004 policy.

48.   The February 2004 policy also prohibited Plaintiff Minahan and other pro-life advocates from standing in one spot, and required them to keep walking, when on the public sidewalk in front of the medical office complex and abortion clinic. *See id.*

49.   In *Minahan I*, Plaintiff Minahan asserted that in 2004, Fort Myers police officers threatened her and other pro-life advocates with arrest for various First Amendment-protected activities on the public sidewalk in front of the medical office complex and abortion clinic. *See Minahan I*, Case No. 2:04-cv-551-JES-DNF, docket entry 1, Compl. at ¶¶ 88-91; docket entry 2-2, Ex. A, Minahan Decl. at ¶¶ 17-19.

50.   For example, in 2004 Fort Myers police officers told Plaintiff Minahan that any pro-life advocate who walked off the public sidewalk onto the driveway leading into the medical complex to hand out literature to a vehicle would be considered blocking access to the abortion clinic and would be subjected to punishment. *See Minahan I*, Case

No. 2:04-cv-551-JES-DNF, docket entry 1, Compl. at ¶ 89; docket entry 2-2, Ex. A, Minahan Decl. at ¶ 17.

51.    Another Fort Myers police officer told Plaintiff Minahan in 2004 that any pro-life advocate who walked off the public sidewalk onto the driveways leading into and out of the medical office complex to walk to the other side of the public sidewalk or to hand out literature would be considered trespassing. *See Minahan I*, Case No. 2:04-cv-551-JES-DNF, docket entry 1, Compl. at ¶ 91; docket entry 2-2, Ex. A, Minahan Decl. at ¶ 18.

52.    Fort Myers police officers informed Plaintiff Minahan that if any pro-life advocate violated the February 2004 policy, they would be arrested. *See Minahan I*, Case No. 2:04-cv-551-JES-DNF, docket entry 1, Compl. at ¶ 88; docket entry 2-2, Ex. A, Minahan Decl. at ¶ 17.

53.    Through a consent judgment and order in *Minahan I*, Defendant Fort Myers was required to repeal certain sections of its parades and processions ordinance and repeal the February 2004 policy. Defendant Fort Myers, its officers, employees, agents, and successors in office, which would include Defendant Conticelli, was also required not to enforce either the ordinance or the policy against Plaintiff Minahan and similarly-situated persons.[2]/ *See Minahan I*, Case No. 2:04-cv-551-JES-DNF, docket entry 33, Consent Judgment and Order.

_____

[2]/ As this Court explained in *Occupy Fort Myers v. City of Fort Myers*, 882 F. Supp. 2d 1320, 1333-34 (M.D. Fla. 2011) (Steele, J.), the City did not comply with the consent judgment and order regarding the repeal of certain sections of the parades and processions ordinance until 2011, about seven years after the City had been ordered to do so.

54.   In or about February through April 2006, after the consent judgment had been entered in *Minahan I* and before the City received a cease and desist letter from Plaintiff Minahan's counsel, Fort Myers police officers continued to interfere with the rights of Plaintiff Minahan and other pro-life advocates on the traditional public forum outside the medical office complex and abortion clinic by wrongfully accusing them of impeding traffic, by telling them they needed a permit to be on the public sidewalk, and by threatening them with citations if they spoke with anyone while on the public sidewalk.

55.   On or about October 2, 2014, after Defendant Officer Conticelli had handed Plaintiff Minahan and the others each a copy of the loitering ordinance and had instructed them, among other things, not to approach vehicles to distribute literature or to stand on the sidewalk, Plaintiff Minahan handed Defendant Officer Conticelli a copy of the consent judgment and order from *Minahan I* to inform him that he was instructing them to do things the City had agreed, and was ordered, to no longer require of pro-life advocates on the public sidewalk in front of the medical office complex and abortion clinic.

56.   Despite the consent judgment in *Minahan I*, Defendants are using the threatened enforcement of the loitering ordinance to achieve the same unconstitutional results of the February 2004 policy, including preventing Plaintiffs and other pro-life advocates from standing on the public sidewalk, approaching vehicles, and distributing literature and talking to people in those vehicles who want to receive the information Plaintiffs and other pro-life advocates are offering on the traditional public forum in front of the medical office complex and abortion clinic.

57.    Based on the threatened enforcement of the loitering ordinance and the instructions from Defendant Officer Conticelli, Plaintiffs now—against their wishes— refrain from approaching vehicles, speaking with people in vehicles or handing them literature, and standing in one spot while on the public sidewalk in front of the medical office complex and abortion clinic, which includes refraining from standing together while praying, out of fear of arrest, citation, prosecution, and/or fine.

58.    Plaintiffs seek relief from this Court to resume engaging in such constitutionally protected activities on the public sidewalk in front of the medical office complex and abortion clinic as soon as possible.

## ALLEGATIONS OF LAW

59.    Plaintiffs' peaceful use of traditional public forums in Fort Myers to walk, pray, speak, and distribute literature is fully protected by their clearly established constitutional rights set forth in the First Amendment to the United States Constitution.

60.    The loitering ordinance is unconstitutional as applied to Plaintiffs.

61.    The loitering ordinance is vague and overbroad and is unconstitutional on its face.

62.    The loitering ordinance vests Defendants with unbridled discretion in their interpretation, application, and enforcement of that ordinance against Plaintiffs and similarly-situated persons and allows Defendants to violate clearly established constitutional rights, including through the suppression of otherwise protected speech and religious expression.

63.   Defendants' threatened enforcement of the loitering ordinance against Plaintiffs and similarly-situated persons for engaging in First Amendment-protected activities in a traditional public forum, as well as Defendants' application of the policy, practice, or custom regarding the restriction of speech and expression of Plaintiffs and other similarly-situated persons in a traditional public forum, is injurious and also unconstitutionally chills the exercise of clearly established constitutional rights, including the rights to disseminate and receive information.

64.   Defendants' threatened enforcement of the loitering ordinance and Defendants' application of its policy, practice, or custom regarding the restriction of Plaintiffs' speech and expression, and that of similarly-situated persons, on the public sidewalk in front of the medical office complex and abortion clinic, unlawfully discriminates based on the content and/or viewpoint of speech and on speaker identity.

65.   Defendants' loitering ordinance and policy, practice, or custom regarding the restriction of Plaintiffs' speech and expression, and that of similarly-situated persons, on the public sidewalk in front of the medical office complex and abortion clinic are not narrowly tailored restrictions that further any significant or compelling government interest, do not leave open ample alternative channels of communication, place a substantial burden on religious exercise, are not the least restrictive means of furthering any significant or compelling governmental interest, and are neither neutral nor generally applicable.

66.   The threatened enforcement of the loitering ordinance against Plaintiffs and similarly-situated persons by Defendants is in bad faith because the loitering ordinance

15

has no application to their free speech activities in the traditional public forum in front of the medical office complex and abortion clinic and its threatened enforcement improperly restricts Plaintiffs' speech and religious expression from being disseminated and received.

67.   The threatened enforcement of the loitering ordinance against Plaintiffs and similarly-situated persons by Defendants is in bad faith because Defendants are trying to achieve what they were ordered not to do in *Minahan I*, that is, require Plaintiff Minahan and similarly-situated persons to keep moving while they are on the public sidewalk in front of the medical office complex and abortion clinic, and also require them to not approach vehicles, distribute literature, or talk to those in vehicles who want to receive their information.

68.   The threatened enforcement of the loitering ordinance to achieve the same result as the invalidated February 2004 policy of restricting the speech and expression of Plaintiffs and similarly-situated persons in a traditional public forum constitutes an official policy, practice, and/or custom of Defendant Fort Myers based on the content and viewpoint of Plaintiffs' speech and religious expression and that of similarly-situated persons and also based on speaker identity.

69.   The application of Defendant Fort Myers' policy, practice, or custom regarding the restriction of the constitutionally protected activities of Plaintiffs and similarly-situated persons in traditional public forums is unconstitutional on its face and as applied because it infringes on clearly established constitutional rights.

16

70.   At all times relevant to this action, Defendant Fort Myers was under a duty to adequately train, supervise, and/or control its police officers, including Defendant Officer Conticelli, to not violate the constitutional rights of Plaintiffs and similarly-situated persons, including to no longer apply or enforce all or part of the February 2004 policy, and Defendant Fort Myers failed to adequately train, supervise, and/or control its police officers, including Defendant Officer Conticelli, in those areas.

71.   At all times relevant to this action, Defendant Fort Myers' failure to adequately train, supervise, and/or control its police officers, including Defendant Officer Conticelli, was closely related to, or a moving force behind, or actually caused, the deprivation of Plaintiffs' clearly established constitutional rights, and reflects a deliberate indifference to the clearly established constitutional rights of citizens, especially Plaintiffs and those similarly situated.

72.   Defendant Officer Conticelli, by threatening to enforce the loitering ordinance against Plaintiffs and those similarly situated and by imposing the other conditions and restrictions set forth in this complaint, has violated the clearly established constitutional rights of Plaintiffs of which a reasonable person should have known.

73.   Plaintiffs have no plain, adequate, or complete remedy to redress the wrongs described in this complaint other than by filing this action.

## FIRST CLAIM FOR RELIEF

### (Violation of Freedom of Speech—Both Defendants)

74.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 73 above and incorporate those allegations herein by reference.

75. As a direct and proximate result of the aforementioned threatened enforcement of the loitering ordinance as well as the laws, acts, policies, practices, and/or customs of Defendants, engaged in under color of state law, Plaintiffs have been deprived of a clearly established constitutional right guaranteed by the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, in that Plaintiffs have been deprived by Defendants of their freedom of speech while in a traditional public forum, including, but not limited to, their right to distribute literature and have conversations with interested individuals.

76. Wherefore, Plaintiffs respectfully request the relief set forth below in the prayer for relief.

## SECOND CLAIM FOR RELIEF

### (Violation of Due Process—Defendant Fort Myers)

77. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 73 above and incorporate those allegations herein by reference.

78. The loitering ordinance on its face is vague and fails to provide adequate notice to enable ordinary citizens to understand what precise conduct it prohibits and authorizes arbitrary and discriminatory enforcement through its lack of precision and thereby has a substantial impact on conduct protected by the due process clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 and violates same.

79. Wherefore, Plaintiffs respectfully request the relief set forth below in the prayer for relief.

### THIRD CLAIM FOR RELIEF

**(Violation of Freedom of Assembly and Association—Both Defendants)**

80.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 73 above and incorporate those allegations herein by reference.

81.   As a direct and proximate result of the aforementioned threatened enforcement of the loitering ordinance as well as the laws, acts, policies, practices, and/or customs of Defendants, engaged in under color of state law, Plaintiffs have been deprived of a clearly established constitutional right guaranteed by the First Amendment to the United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, in that Plaintiffs have been deprived by Defendants of their freedom of assembly and association while in a traditional public forum.

82.   Wherefore, Plaintiffs respectfully request the relief set forth below in the prayer for relief.

### FOURTH CLAIM FOR RELIEF

**(Violation of Freedom of Religious Exercise—Both Defendants)**

83.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 73 above and incorporate those allegations herein by reference.

84.   As a direct and proximate result of the aforementioned threatened enforcement of the loitering ordinance as well as the laws, acts, policies, practices, and/or customs of Defendants, engaged in under color of state law, Plaintiffs have been deprived of a clearly established constitutional right guaranteed by the First Amendment to the

United States Constitution as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, in that Plaintiffs have been deprived by Defendants of their freedom of religious exercise while in a traditional public forum.

85.   Wherefore, Plaintiffs respectfully request the relief set forth below in the prayer for relief.

## FIFTH CLAIM FOR RELIEF

### (Violation of Obligation to Train, Supervise, or Control—Defendant Fort Myers)

86.   Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 73 above and incorporate those allegations herein by reference.

87.   Defendant Fort Myers has failed in its duty to adequately train, supervise, and/or control its police officers, including Defendant Officer Conticelli, to not violate the clearly established constitutional rights of Plaintiffs and similarly-situated persons, including to no longer apply or enforce all or part of the February 2004 policy, and Defendant Fort Myers' failure to adequately train, supervise, and/or control its police officers, including Defendant Officer Conticelli, was closely related to, or a moving force behind, or actually caused, the deprivation of Plaintiffs' clearly established constitutional rights, and reflects a deliberate indifference to the clearly established constitutional rights of citizens, especially Plaintiffs and those similarly situated, in violation of 42 U.S.C. § 1983, as set forth in this complaint.

88.   Wherefore, Plaintiffs respectfully request the relief set forth below in the prayer for relief.

**PRAYER FOR RELIEF**

89.   Plaintiffs repeat and re-allege all allegations made above and incorporate those allegations herein by reference, and Plaintiffs respectfully ask that this Court grant them the following relief and enter final judgment against Defendants:

A.   Declare that Defendant Fort Myers' loitering ordinance as applied to Plaintiffs violates the freedoms protected by the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

B.   Declare that Defendant Fort Myers' loitering ordinance on its face violates the freedoms protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 or, in the alternative, declare that certain provisions of the loitering ordinance violate the freedoms protected by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and sever those offending portions of the text from the rest of the ordinance;

C.   Declare that the application of Defendant Fort Myers' policy, practice, or custom of restricting the constitutional rights of Plaintiffs in traditional public forums, as set forth in this complaint, violates the freedoms protected by the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

D.   Declare that Defendant Fort Myers' policy, practice, or custom of restricting the exercise of the constitutional rights of Plaintiffs and similarly-situated persons in traditional public forums, as set forth in this complaint, violates on its face the freedoms protected by the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

21

E.     Declare that Defendant Fort Myers' failure to train, supervise, or control its police officers, including Defendant Officer David Conticelli, deprived Plaintiffs of their clearly established constitutional rights and reflected deliberate indifference thereto in violation of 42 U.S.C. § 1983;

F.     Permanently enjoin Defendant Officer David Conticelli and Defendant Fort Myers, its officers, agents, servants, employees, successors in office, police, attorneys, prosecutors, and anyone else who is in active concert or participation with them from enforcing the loitering ordinance and the other unconstitutional restrictions set forth in this complaint, including through arrest, charge, citation, prosecution, or fine, against Plaintiffs and similarly-situated persons while they are exercising their constitutional rights on traditional public forums in Fort Myers;

G.     Award each Plaintiff nominal damages in a total amount not to exceed $19.00;

H.     Award Plaintiffs their reasonable attorneys' fees and costs associated with this action; and

I.     Award Plaintiffs any other and further relief that this Court deems equitable and just.

Respectfully submitted on this 27th day of October, 2014,

AMERICAN CENTER FOR LAW & JUSTICE

/s/ Edward L. White III
Edward L. White III
Trial Counsel
Florida Bar No. 893773
M.D. Fla. Bar No. 14394
Erik M. Zimmerman*
American Center for Law & Justice
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Tel. 734-680-8007; Fax. 734-680-8006
ewhite@aclj.org; ezimmerman@aclj.org

Francis J. Manion*
Geoffrey R. Surtees*
American Center for Law & Justice
Post Office Box 60
New Hope, Kentucky 40052
Tel. 502-549-7020; Fax. 502-549-5252
fmanion@aclj.org; gsurtees@aclj.org

* Pro hac vice application forthcoming

*Counsel for Plaintiffs*

## VERIFICATION BY JUDITH MINAHAN

I, Judith Minahan, an adult resident of the State of Florida and a Plaintiff in the foregoing complaint, state that the facts contained in paragraphs 1, 11, 22-23, 25, 27-44, 54-55, 57-58 in the foregoing complaint are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Executed on October 23, 2014, in Fort Myers, Florida.

_Judith C. Minahan_
Judith Minahan

(The declaration electronically filed with the Court bears the scanned original signature of Judith Minahan. The original declaration, bearing the original signature, is being retained by her counsel in this action and is available for review on request by the Court and counsel for Defendants.)

## VERIFICATION BY JOANN O'CONNELL

I, JoAnn O'Connell, an adult resident of the State of Florida and a Plaintiff in the foregoing complaint, state that the facts contained in paragraphs 1, 12, 22-23, 25, 27-44, 57-58 in the foregoing complaint are true and correct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Executed on October 25, 2014.

_JoAnn O'Connell_
JoAnn O'Connell

(The declaration electronically filed with the Court bears the scanned original signature of JoAnn O'Connell. The original declaration, bearing the original signature, is being retained by her counsel in this action and is available for review on request by the Court and counsel for Defendants.)