UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JUDITH  MINAHAN  and  JOANN
O'CONNELL,

      Plaintiffs,

v.                                    Case No: 2:14-cv-629-FtM-29DNF

CITY OF FORT MYERS, FLORIDA
and DAVID CONTICELLI, Fort
Myers Police Officer, in his
personal    and    official
capacities,

      Defendants.

_____

## OPINION AND ORDER

    This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction (Doc. #4) filed on October 29, 2014. Defendants filed a Response (Doc. #27) on December 2, 2014 and the Court heard oral argument on December 9, 2014.  For the reasons set forth below, the motion is granted in part and denied in part.

## I.

    Plaintiffs, two "volunteer pro-life advocates," seek a preliminary injunction enjoining Defendants the City of Fort Myers Florida (the City) and Fort Myers Police Office David Conticelli (Officer Conticelli) from enforcing Section 86-2, Subpart A of Chapter 86 of the Code of Ordinances of the City of Fort Myers (the Ordinance) against them and those similarly-situated.  In general terms, the Ordinance prohibits loitering that obstructs, or tends to obstruct, vehicular or pedestrian traffic.  Plaintiffs

allege that Defendants' threatened enforcement of the Ordinance against them adversely impacts their ability to peacefully pray, counsel, and distribute literature on the public sidewalk outside of the Fort Myers Women's Health Center (the Health Center).

On October 2, 2014, Officer Conticelli responded to a complaint from the property manager for the commercial building complex that houses the Health Center.  According to Officer Conticelli, the property manager complained that Plaintiffs were creating a safety hazard by obstructing vehicles attempting to enter and exit the complex's parking lot.  (Doc. #27-2.)  After speaking with the property manager regarding his concerns, Officer Conticelli then spoke with Plaintiffs outside the Health Center. (Id.)  Officer Conticelli informed Plaintiffs of the property manager's complaints and read them a copy of the Ordinance.  As it relates to loitering, the Ordinance provides:

> (a) *Definitions.*
>
> The following words, terms and phrases, when used in this section, shall have the meanings ascribed to them in this subsection, except where the context clearly indicates a different meaning:
>
> . . .
>
> *Loitering* means remaining idle in essentially one location and shall include the concept of spending time idly, to be dilatory, to linger, to stay, to saunter, to delay, or to stand around, and shall also include the colloquial expression "hanging around."
>
> . . .
>
> *Public place* means any place to which the general public has access and a right to resort for business,

entertainment, or other lawful purpose, but does not necessarily mean a place devoted solely to the uses of the public. It shall also include the front or immediate area of any store, shop, restaurant, tavern or other place of business and also public grounds, areas or parks.

(b) *Loitering acts prohibited.*

    (1) It shall be unlawful for any person to loiter, loaf, wander, cruise in a motor vehicle, stand or remain idle, either alone and/or in consort with others, in a public place in such manner so as to:

a. Obstruct or hinder the movement of traffic on any public street, public highway, public sidewalk, or any other public place or building by hindering or impeding, or tending to hinder or impede, the free and uninterrupted passage of vehicles, traffic or pedestrians.

b. Commit, in or upon any public street, public highway, public sidewalk or any other public place or building, any act or thing which is an obstruction or interference to the free and uninterrupted use of property or with any business lawfully conducted by anyone in or upon or facing or fronting on any such public street, public highway, public sidewalk or any other public place or building, all of which prevents the free and uninterrupted ingress, egress and regress therein, thereon, and thereto.

. . .

(c) *Duty of police.*

When any person causes or commits any of the conditions enumerated in this section, any law enforcement officer shall order that person to stop causing or committing such conditions, and to move on or disperse. Any person who fails or refuses to obey such orders shall be guilty of a violation of this section.

. . .

(e) *Violations; penalties.*

Any person who violates any of the provisions of this section shall be subject to a fine of not less than

$25.00, and not exceeding $250.00. Any such violation shall constitute a separate offense.

(Doc. #27-1.)

After reading the Ordinance, Officer Conticelli explained that, based on his brief observation of their activities as he arrived at the complex, Plaintiffs appeared to be obstructing vehicles from entering and exiting the property. (Id.)[1] For approximately 30 minutes, Plaintiffs and Officer Conticelli discussed the nuances of the Ordinance and Officer Conticelli endeavored to provide Plaintiffs with instructions as to how they could continue to "get their message out" while complying with the Ordinance. (Doc. #27-2, Ex. A.) Plaintiffs' chief quarrel with Officer Conticelli's instructions is that they were told (1) that they would violate the Ordinance unless they "kept moving," and (2) that they could not approach any vehicles entering or leaving the complex. (Doc. #4, pp. 4-5.)

While Plaintiffs are correct that Officer Conticelli did instruct Plaintiffs that they must "keep moving," based upon the context of the video it appears that he was instructing Plaintiffs that one way in which they could engage with a passerby without obstructing pedestrian traffic (and thereby violating the

---

[1] In addition to Officer Conticelli's affidavit setting forth his recollection of the events, Defendants have also provided a DVD containing the video and audio of Officer Conticelli's conversation as recorded by the dashboard camera in his patrol car. (Doc. #27-2, Ex. A.)

Ordinance) was to engage with the passerby while moving down the sidewalk. (Doc. #27-2, Ex. A.) It does not appear that Officer Conticelli intended to instruct Plaintiffs that a mere lack of movement, absent an obstruction, would violate the Ordinance. (Id.) If this was his intent, the City made clear at oral argument that the mere lack of movement, without an obstruction, would not violate the Ordinance.

Likewise, the recording of the encounter does not show Officer Conticelli instructing Plaintiffs that they could not engage with individuals in vehicles who were willing to speak to them. (Id.) Instead, he explained that they could not block the path of vehicles, flag them down, or otherwise approach them in a manner that would prevent the driver of the vehicle from declining to engage with Plaintiffs and continuing to drive into and/or out of the complex. (Id.) While Officer Conticelli and Plaintiffs disagreed as to whether or not the activities he observed did in fact obstruct vehicular traffic, Officer Conticelli was clear that his concern was with obstruction, not mere engagement. (Id.)

Following this discussion, Officer Conticelli left the property without issuing any warnings or citations for violating the Ordinance. (Id. at ¶ 10.) There have been no subsequent interactions between Plaintiffs and the Fort Myers Police Department, and Plaintiffs acknowledge that they have continued

their activities outside of the Health Center, albeit in what they assert has been a more cautious and limited manner.

On October 28, 2014, Plaintiffs filed a five-count Complaint (Doc. #1) alleging that the Ordinance (and Defendants' threatened enforcement of the Ordinance) violates their constitutional rights to freedom of speech, freedom of assembly and association, freedom of religious exercise, and due process.  Plaintiffs also allege that the City is liable for its failure to adequately train, supervise, and/or control its police officers. (Id.)  As relief, Plaintiffs seek an order declaring (1) that the Ordinance is unconstitutional (either on its face or as applied to Plaintiffs); (2) that the City has a employed an unconstitutional policy or custom of depriving Plaintiffs and similarly-situated individuals of their constitutional rights; and (3) that the City's failure to train, supervise, or control its police officers deprived Plaintiffs of their constitutional rights. (Id.)  Plaintiffs also seek a permanent injunction requiring the City to refrain from enforcing the Ordinance and/or any other unconstitutional restriction of Plaintiffs' constitutional rights.  Plaintiffs now seek an equivalent preliminary injunction allowing them to maintain their activities outside the Health Center unimpeded pending the outcome of the case.

## II.

A federal court has inherent authority to issue an injunction to remedy a violation of constitutional rights.  Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004).  "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held."  Bloedorn v. Grube, 631 F.3d 1218, 1229 (11th Cir. 2011).  In order to obtain a preliminary injunction, the movant must demonstrate "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is issued, and (4) an injunction would not disserve the public interest."  Odebrecht Constr. v. Sec'y, Fla. DOT, 715 F.3d 1268, 1273-74 (11th Cir. 2013).  "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes 'the burden of persuasion' as to each of the four prerequisites."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)).

## A.    A Substantial Likelihood of Success on the Merits

The First Amendment to the U.S. Constitution provides in pertinent part that "Congress shall make no law . . . abridging

the freedom of speech . . . or the right of the people peaceably to assemble and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Supreme Court has long held that the First Amendment applies to the States through the Fourteenth Amendment. Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 792 n.2 (1984) (citing Lovell v. Griffin, 303 U.S. 444, 450 (1938) ("Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action.")). Likewise, "municipal ordinances adopted under state authority constitute state action and are within the prohibition of the [First] [A]mendment." Lovell, 303 U.S. at 450.

The parties agree that the First Amendment applies to the Ordinance. It is also undisputed that that the sidewalk counseling, prayer, and distribution of literature performed by Plaintiffs constitute speech protected by the First Amendment. See Snyder v. Phelps, 131 S. Ct. 1207, 1215 (2011) ("Speech on matters of public concern is at the heart of the First Amendment's protection."); McCullen v. Coakley, 134 S. Ct. 2518, 2529 (2014) (public streets and sidewalks are prototypical examples of public fora which "occupy a special position in terms of First Amendment

protection because of their historic role as sites for discussion and debate").

It is also well settled that the First Amendment protection of speech and assembly is not absolute. Thus, while the First Amendment applies to the City's conduct, a city government "need not permit all forms of speech on property that it owns and controls." International Soc'y for Krishna Consciousness v. Lee, 505 U.S. 672, 678 (1992). Rather, conduct protected by the First Amendment is "subject to reasonable time, place, or manner restrictions that are consistent with the standards announced in this Court's precedents." Snyder, 131 S. Ct. at 1218. Accordingly, what remains is an inquiry into whether the Ordinance is a permissible restriction on Plaintiffs' First Amendment rights. Plaintiffs assert five bases for their argument that the Ordinance is impermissible. The Court will address each in turn.

## 1.  **Whether The Ordinance Is Void For Vagueness**

An ordinance is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926). A plaintiff asserting that a statute is void for vagueness must show either: (1) the statute fails to give fair notice of wrongdoing; or (2) the statute lacks enforcement standards such that it might lead to arbitrary or discriminatory enforcement. Grayned v. City of Rockford, 408 U.S.

104, 108–09 (1972). "[T]he Constitution demands a high level of clarity from a law if it threatens to inhibit the exercise of a constitutionally protected right, such as the right of free speech or religion." Konikov v. Orange Cnty., 410 F.3d 1317, 1329 (11th Cir. 2005). When bringing a facial challenge to an ordinance for vagueness, "a party who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Catron v. City of St. Petersburg, 658 F.3d 1260, 1271 (11th Cir. 2011) (quotations omitted). "If Plaintiffs' own conduct is clearly proscribed by the terms of the ordinance, this necessarily precludes a finding of facial vagueness." Id. On the other hand, if the conduct is not clearly proscribed by the terms of the ordinance, the court "must decide whether what the ordinance as a whole prohibits in the vast majority of its intended applications is clear enough." Id. at 1272 (quotations omitted).

Plaintiffs contend that the phrase "hindering or impeding, or tending to hinder or impede, the free and uninterrupted passage of vehicles, traffic or pedestrians" is impermissibly vague. According to Plaintiffs, the fact that the Ordinance does not specify how long the hindrance must last or the degree to which passage must be obstructed constitutes a lack of enforcement standards such that the Ordinance is subject to arbitrary or discriminatory enforcement. The Court agrees in part, but only

as to the portion of the Ordinance that prohibits behavior "tending to hinder or impede" traffic.

In Shuttlesworth v. City of Birmingham, the Supreme Court addressed a loitering ordinance which criminalized loitering that obstructed the free passage of pedestrians on city streets and sidewalks.  382 U.S. 87, 90-91 (1965).  While noting that such a statute could be subject to as-applied constitutional challenges, the Supreme Court held that ordinance was not facially unconstitutional.  Id.  Accordingly, Shuttlesworth forecloses Plaintiffs' argument that a loitering ordinance lacks sufficient enforcement standards if it requires only that officers determine that the loiterer is obstructing the free passage of pedestrians.

The ordinance in Shuttlesworth, however, addressed actual obstructions only, while the Ordinance here also prohibits conduct "tending to" obstruct the free flow of traffic.  As this Court has previously held, the phrase "behavior tending to" has no established meaning, and is not comprehensible to persons of ordinary intelligence.  Occupy Fort Myers v. City of Fort Myers, 882 F. Supp. 2d 1320, 1338 (M.D. Fla. 2011).  This is true even where, as here, the object of the phrase is not vague.  Id. (holding that the phrase "behavior tending to breach of the peace" was vague even though the phrase "breach of the public peace" was not).  Accordingly, the Court finds that Plaintiffs are likely to succeed on their vagueness challenge only as to the portion of the

Ordinance prohibiting conduct "tending to hinder or impede[] the free and uninterrupted passage of vehicles, traffic or pedestrians."

## 2.   **Whether The Ordinance Is Void For Overbreadth**

Typically, a plaintiff making a facial challenge to an ordinance must establish that no set of circumstances exists under which the ordinance would be valid.  United States v. Salerno, 481 U.S. 739, 745 (1987).  "However, the Supreme Court has carved out a narrow exception to this rule in what is known as the 'overbreadth doctrine,' which allows a litigant to assert a facial challenge to a statute because it could compromise the First Amendment rights of parties not before the Court."  DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1269 (11th Cir. 2007). The rationale behind the exception, which is reserved for cases involving restrictions on the right to free speech, "is that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court."  DA Mortg., 486 F.3d at 1269 (11th Cir. 2007) (quoting Forsyth Cnty. v. Nationalist Movement, 505 U.S. 123, 129 (1992).

Where, as here, an ordinance addresses conduct and not merely speech, a statute will not be overturned unless the overbreadth is "not only [] real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  Vincent, 466 U.S. at 799-800.  "In short, there must be a realistic danger that the

statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." Id. at 801. "The mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." United States v. Williams, 553 U.S. 285, 303 (2008) (citation omitted).

As explained above, the Court has already concluded that the portion of the Ordinance prohibiting conduct "tending to hinder or impede[] the free and uninterrupted passage of vehicles, traffic or pedestrians" is void for vagueness. What remains is an Ordinance functionally identical to the ordinance in Shuttlesworth, which the Supreme Court found to be facially constitutional. 382 U.S. 87, 90-91 (1965). Moreover, Plaintiffs have not identified any protected conduct that the Ordinance prohibits, let alone an amount substantial enough to prevail on an overbreadth challenge. Accordingly, the Court concludes that Plaintiffs are unlikely to prevail on their claim that the Ordinance, to the extent is it is not void for vagueness, is unconstitutionally overbroad.

**3.**   **Whether The Ordinance Is Unconstitutional As Applied To Plaintiffs**

Plaintiffs argue that the Ordinance is unconstitutional as applied to them because it is a content-based restriction on their First Amendment rights absent a compelling government interest.

Plaintiffs also argue that the Ordinance fails the less-stringent test applied to content-neutral restrictions because the Ordinance does not provide the requisite alternative channels of communication for their prohibited speech. Defendants respond that Plaintiffs do not have standing to bring an as-applied challenge because they have not been cited for violating the Ordinance nor has their speech been chilled by the threat of enforcement. In the alternative, Defendants argue that the Ordinance is content-neutral, is narrowly tailored to achieve a significant government interest, and leaves open ample alternative channels of communication.

### a. *Standing*

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "A plaintiff who invokes the jurisdiction of a federal court bears the burden of showing (1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." KH Outdoor, L.L.C. v. Clay Cnty., 482 F.3d 1299, 1303 (11th Cir. 2007)

(quotation omitted).   "Each element is an indispensable part of
the plaintiff's case and must be supported in the same way as any
other matter on which the plaintiff bears the burden of proof . .
. ."   Id. (quoting Lujan, 504 U.S. at 561).

Defendants argue that Plaintiffs cannot satisfy the injury-
in-fact requirement because Officer Conticelli neither cited nor
threatened to cite Plaintiffs for violating the Ordinance, and
Plaintiffs have since continued their activities outside the
Health Center unimpeded.   Plaintiffs argue that they have been
injured because, out of fear of arrest, they now refrain from
constitutionally-protected activities such as approaching vehicles
to distribute pamphlets.

The injury-in-fact requirement is applied "most loosely where
First Amendment rights are involved, lest free speech be chilled
even before the law or regulation is enforced."   Wollschlaeger v.
Governor of Fla., 760 F.3d 1195, 1209 (11th Cir. 2014) (citation
omitted).   Self-censorship is a cognizable injury-in-fact for
standing purposes provided Plaintiffs demonstrate "that, as a
result of their desired expression, (1) they were threatened with
prosecution; (2) prosecution is likely; or (3) there is a credible
threat of prosecution."   Id. (quotation omitted).   "To establish
that there is a credible threat of prosecution, Plaintiffs must
demonstrate: first, that they seriously wish to engage in
expression that is at least arguably forbidden by the pertinent

law, and second, that there is at least some minimal probability that the challenged rules will be enforced if violated." Id. at 1210 (internal citation and quotation omitted).

The Court concludes that the Ordinance arguably forbids Plaintiffs from approaching vehicles to distribute pamphlets in the manner observed by Officer Conticelli, that Plaintiffs seriously wish to engage in such activity (Doc. #30-1, ¶ 3), and that, as evidenced by Officer Conticelli's discussion with Plaintiffs in response to the property manager's complaint, there exists at least a minimal probability that that the Ordinance will be enforced if violated.  Accordingly, the Court finds that Plaintiffs have standing to bring their as-applied challenge to the Ordinance.

### b. Merits

On its terms, the Ordinance is content-neutral because it does not "require[] enforcement authorities to examine the content of the message that is conveyed to determine whether a violation has occurred." McCullen, 134 S. Ct. at 2531 (quoting FCC v. League of Women Voters, 468 U.S. 364, 383 (1984)).  To the contrary, the Ordinance applies to an individual's conduct only, irrespective of whether the individual is also engaged in speech.

Plaintiffs contend that while the Ordinance does not explicitly restrict speech, it is nevertheless content-based because it has the potential to be enforced only against

individuals who are expressing messages with which the City disagrees. In support of this argument, Plaintiffs point to the fact that, in 2004, they successfully challenged a City ordinance which required Plaintiffs to obtain a permit before conducting their activities outside the Health Center. Minahan v. City of Fort Myers, No. 04-CV-551, Doc. #33 (M.D. Fla. Dec. 21, 2004). According to Plaintiffs, this is evidence of the City's selective enforcement of ordinances against individuals expressing certain messages. The Court disagrees.

According to Officer Conticelli, he spoke with Plaintiffs in response to a complaint from the property manager for the complex housing the Health Center (Doc. #27-2), and Plaintiffs have not provided any evidence of an ulterior motive or selective enforcement. Indeed, the recording of Officer Conticelli's conversation with Plaintiffs demonstrates that he was entirely unaware of the 2004 lawsuit concerning the permit ordinance. Moreover, Officer Conticelli repeatedly explained to Plaintiffs the various ways they could *continue* their activities outside the Health Center within the bounds of the Ordinance. (Id.) Accordingly, the Court continues to conclude that the Ordinance is content-neutral as applied to Plaintiffs.

Content-neutral ordinances "must be narrowly tailored to serve a significant governmental interest." McCullen, 134 S. Ct. at 2534. Where, as here, a content-neutral ordinance restricts

the time, place, or manner of speech, "the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." Ward v. Rock Against Racism, 491 U.S. 781, 799 (1989) (quotation omitted). This "does not mean that a time, place, or manner regulation may burden substantially more speech than is necessary to further the government's legitimate interests." Id. at 799. However, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." Id. at 800. To determine whether a regulation is substantially broader than necessary, courts assess whether the regulation "leaves open ample alternative channels of communication." DA Mortgage, 486 F.3d at 1267.

"[E]nsuring public safety and order, promoting the free flow of traffic on streets and sidewalks, [and] protecting property rights" are legitimate and significant government interests. McCullen 134 S. Ct. at 2535 (quoting Schenck v. Pro-Choice Network, 519 U.S. 357, 376, (1997)). As limited by the Court as set forth above, the Ordinance applies only to loitering that "hinder[s] or imped[es] . . . the free and uninterrupted passage of vehicles, traffic or pedestrians." Plaintiffs argue that

Officer Conticelli's interpretation of the Ordinance prohibits conduct even if it does not hinder or impede traffic. While Officer Conticelli's description of his interpretation may not have been a model of clarity, the Court concludes that he did not intend to instruct Plaintiffs that they would violate the Ordinance absent an obstruction. Additionally, at oral argument the City confirmed that its "official" interpretation of the Ordinance is that a violation does not occur unless pedestrian or vehicular traffic is obstructed. As a result, the Court concludes that the Ordinance promotes a substantial government interest.

The remaining question is whether, as applied to Plaintiffs, the Ordinance is substantially broader than necessary to promote the free flow of traffic on streets and sidewalks. That is, whether it leaves ample alternative channels for Plaintiffs to exercise their First Amendment rights.

Plaintiffs argue that the Ordinance does not leave ample alternative channels for Plaintiffs to express their message because it effectively prevents them from addressing anyone entering or leaving the Health Center. This is not the case. As explained by Officer Conticelli, Plaintiffs are free to engage in sidewalk counseling, prayer, and the distribution of pamphlets on the public sidewalk outside the Health Center. Likewise, they are permitted to engage with pedestrians and with individuals in vehicles. The only restriction placed upon them is that they

cannot do so in a way that hinders or impedes pedestrian or vehicular traffic.  Thus, the Court concludes that the Ordinance's requirement that Plaintiffs step aside so that pedestrians who choose not to engage with them can continue on their way, and its prohibition against engaging with vehicles in such a way that those vehicles prevent others from entering and/or exiting the complex, are not substantially broader than necessary to promote the City's interest in the free flow of traffic on streets and sidewalks. Accordingly, the Court finds that Plaintiffs are not likely to succeed on the merits of their claim that the Ordinance is unconstitutional as applied to them.

**4.  Whether The City Has a Practice Or Policy Of Depriving Plaintiffs Of Their Constitutional Rights**

Plaintiffs allege that the City's threatened enforcement of the Ordinance is part of a practice or policy that deprives them of their First Amendment rights in violation of 42 U.S.C. § 1983 (Section 1983).  Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under Section 1983 against a municipality such as the City, Plaintiffs must prove that (1) their constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to their constitutional rights, and (3) the policy or custom caused the

violation of their constitutional rights.  <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004).

As set forth above, the Court concludes that Plaintiffs are unlikely to prevail on their as-applied challenge to the Ordinance. The Court further concludes that Plaintiffs have not provided sufficient evidence of a custom or policy constituting deliberate indifference to their constitutional rights.  Any implication of an impermissible policy which could be inferred from the City's enforcement of a different ordinance against Plaintiffs in the past is heavily outweighed by the fact that Plaintiffs have conducted their activities outside the Health Center unimpeded during the ten years preceding the current dispute.  Moreover, Officer Conticelli's uncontradicted testimony states that he had no knowledge of the City's history with Plaintiffs when he responded to the property manager's complaint.  (Doc. #27-2, ¶¶ 11-15.)  Accordingly, the Court finds that Plaintiffs are unlikely to prevail on the merits of their Section 1983 claim.

5. **<u>Whether The Ordinance Violations Plaintiffs' Right To Freedom of Assembly and Association</u>**

Plaintiffs also allege that the Ordinance unconstitutionally restricts their First Amendment right to assemble and associate. Plaintiffs do not raise any new legal arguments in this regard, instead relying on the "close nexus between the freedoms of speech and assembly," <u>NAACP v. Alabama</u>, 357 U.S. 449, 460 (1958), to argue that to the extent the Ordinance violates their freedom of speech,

it also violates their freedom of assembly and association. Accordingly, Plaintiffs' freedom of assembly and association claims do not require separate analysis for the purposes of this motion.

**B.    Irreparable Injury**

"A showing of irreparable injury is the *sine qua non* of injunctive relief." Siegel, 234 F.3d at 1176 (citation omitted). "Regarding irreparable injury, it is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." KH Outdoor, 458 F.3d at 1271-72 (quotation omitted).   Thus, Plaintiffs have established the existence of an irreparable injury.

**C.    Balance of the Injuries, Public Interest**

Plaintiffs must also establish that the threatened injury to them outweighs the harm a preliminary injunction may cause to the defendant and that an injunction would not harm or do a disservice to the public interest.   Siegel, 234 F.3d at 1176.   "[E]ven a temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the city has no legitimate interest in enforcing an unconstitutional ordinance. For similar reasons, the injunction plainly is not adverse to the public interest.   The public has no interest in enforcing an unconstitutional ordinance." KH Outdoor, 458 F.3d at 1272.   Both factors favor issuance of a preliminary injunction.

D.    **Bond Requirement**

Plaintiffs assert that they should not be required to post a bond because there are no foreseeable costs or damages likely to be incurred should the Court issue an injunction.  Defendants have not taken a position on the issue.

Rule 65(c) of the Federal Rules of Civil Procedure provides that a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  "[B]efore a court may issue a preliminary injunction, a bond must be posted, but it is well-established that "the amount of security required by the rule is a matter within the discretion of the trial court and the court may elect to require no security at all." BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC, 425 F.3d 964, 971 (11th Cir. 2005) (citations omitted).  Given the limited scope of the preliminary injunction to be issued, the Court finds it appropriate to require a nominal $100 bond to be posted.

Accordingly, it is hereby

**ORDERED:**

1.    Plaintiffs' Motion for Preliminary Injunction (Doc. #4) is **GRANTED IN PART** and **DENIED IN PART**.

2.    Defendants, and all those acting in concert with Defendants, are preliminarily enjoined and restrained from

enforcing against Plaintiffs and those similarly-situated Section 86-2, Subpart A of Chapter 86 of the Code of Ordinances of the City of Fort Myers to the extent that it prohibits conduct "tending to hinder or impede[] the free and uninterrupted passage of vehicles, traffic or pedestrians."

3.   The motion is otherwise **DENIED**.

4.   Pursuant to Fed. R. Civ. P. 65(c), Plaintiffs shall post a bond in the amount of $100, as payment of damages to which Defendants may be entitled for wrongful injunction or restraint.

**DONE and ORDERED** at Fort Myers, Florida, this   16th   day of December, 2014.

_____
JOHN E. STEELE
UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record

– 24 –